John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
1601 S. Rainbow Blvd., Suite 160
Las Vegas, NV 89146
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@aldrichlawfirm.com
*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| DAVID GUNDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KLONDEX MINES LTD., RICHARD J. HALL, BLAIR SCHULTZ, RODNEY COOPER, MARK DANIEL, JAMIE HAGGARTY, PAUL ANDRE HUET, WILLIAM MATLACK, CHARLES OLIVER, HECLA MINING COMPANY, and 1156291 B.C. UNLIMITED LIABILITY COMPANY,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

    Plaintiff David Gunderson ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

    1.    Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Klondex Mines Ltd. ("Klondex" or the "Company"), against Klondex, and the Company's Board of Directors (the "Board" or the "Individual Defendants")(collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of

Defendants' efforts to sell the Company to Hecla Mining Company ("Parent") and 1156291 B.C. Unlimited Liability Company (the "Merger Sub" and collectively with Parent, "Hecla") as a result of an unfair process for an unfair price, and to enjoin the stockholder vote on a proposed stock for stock transaction valued at approximately $462 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 19, 2018, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Klondex will become an indirect wholly-owned subsidiary of Hecla, and Klondex stockholders will receive approximately $2.47 in cash for each share of Klondex common stock they own.

3.      Specifically, Klondex stockholders may elect to receive either $2.47 in cash (the "Cash Alternative") or 0.6272 of a Hecla share (the "Share Alternative") ( at the time of the merger announcement each full Hecla share was valued at US$3.94) subject in each case to pro-ration based on a maximum cash consideration of US$157.4 million and a maximum number of Hecla shares issued of 77.4 million.  Furthermore, if all Klondex stockholders elect either the Cash Alternative or the Share Alternative, each Klondex stockholder would be entitled to receive US$0.8411 in cash and 0.4136 Hecla shares.  Klondex stockholders may also elect to receive US$0.8411 in cash and 0.4136 of a Hecla share and Klondex stockholders who fail to make an election will automatically receive US$0.8411 in cash and 0.4136 of a Hecla share. Klondex shareholders will also receive shares of a newly formed company ("Klondex Canada") which will hold Klondex's Canadian assets, including the True North and Bison Gold Resources properties that will be spun off from Klondex during the Proposed Transaction.

4.      Thereafter, on May 23, 2018, Klondex filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

5.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy indicates that no proper market check was made throughout the sales process.

CLASS ACTION COMPLAINT

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

7.      Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Klondex and is the result of a flawed sales process.

8.      In violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on May 23, 2018 with the United States Securities and Exchange Commission ("SEC") in an effort to solicit stockholders to vote their Klondex shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient and deprives Klondex stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Klondex, Havilah, Hecla, the potential combined company provided by Klondex and Hecla to the Company's financial advisors GMP Securities, L.P. ("GMP"), INFOR Financial Inc. ("INFOR"), and Maxit Capital ("Maxit") for use in their financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisors, GMP, INFOR, and Maxit.

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed

Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**PARTIES**

10. Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Klondex stockholder.

11. Defendant Klondex together with its subsidiaries, acquires, explores, develops, and produces mineral properties in the United States and Canada. It primarily explores for gold and silver deposits. Klondex is organized under the laws of the Canadian Province of British Columbia and has its United States' principal place of business at 6110 Plumas Street Suite A, Reno, Nevada 89519. Shares of Klondex common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "KLDX."

12. Defendant Richard J. Hall ("Hall") has been a Director of the Company at all relevant times. In addition, Hall serves as the Chairman of the Company Board.

13. Defendant Blair Schultz ("Schultz") has been a director of the Company at all relevant times.

14. Defendant Rodney Cooper ("Cooper") has been a director of the Company at all relevant times.

15. Defendant Mark Daniel ("Daniel") has been a director of the Company at all relevant times.

16. Defendant Jamie Haggarty ("Haggarty") has been a director of the Company at all relevant times.

17. Defendant Paul Andre Huet ("Huet") has been a director of the Company at all relevant times. In addition, Huet serves the Company's Chief Executive Officer.

18. Defendant William Matlack ("Matlack") has been a director of the Company at all relevant times.

19. Defendant Charles Oliver ("Oliver") has been a director of the Company at all relevant times.

CLASS ACTION COMPLAINT

20.     Defendants Hall, Schultz, Cooper, Daniel, Haggarty, Huet, Matlack, and Oliver identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

21.     Parent is a Delaware corporation with its headquarters located at 6500 North Mineral Drive, Suite 200, Coeur d'Alene, Idaho, 83815.  Parent is a mining company that discover, acquires, develops, produces, and markets silver, gold, lead, and zinc.

22.     Merger Sub is a wholly-owned subsidiary of Parent that was created for the purposes of effectuating the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Klondex has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Klondex common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

27.     This action is properly maintainable as a class action because:

CLASS ACTION COMPLAINT

a. The Class is so numerous that joinder of all members is impracticable. As of April 27, 2018, there were more than 179 million common shares of Klondex stock outstanding. The actual number of public stockholders of Klondex will be ascertained through discovery;

b. There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i. Whether Defendants have violated the federal securities laws;

    ii. Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy; and

    iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f. Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

CLASS ACTION COMPLAINT

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

28.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Klondex and owe the Company the duties of due care, loyalty, and good faith.

29.  By virtue of their positions as directors and/or officers of Klondex, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Klondex to engage in the practices complained of herein.

30.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

**CLASS ACTION COMPLAINT**

31.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Klondex, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Klondex, Plaintiff and the other public stockholders of Klondex, including their duties of loyalty, good faith, and due care.

33.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Klondex common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

34.     Klondex together with its subsidiaries, acquires, explores, develops, and produces mineral properties in the United States and Canada.  The Company primarily explores for gold and silver deposits.

35.     Klondex holds 100% interests in the Fire Creek mine covering approximately 19,000 acres located in Lander County, NV; the Midas mine and ore milling facility covering approximately 30,000 acres situated in Elko County, NV; and the Hollister mine covering approximately 18,000 acres located in Elko County, NV.

36.     Klondex also has 100% interests in the True North gold mine and mill covering approximately 39,868 hectares situated in Manitoba, Canada; and the Aurora mine and ore milling facility covering approximately 5,004 contiguous acres located in Nevada, as well as in

the Ogama-Rockland property in Manitoba, Canada.

37.    The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a March 14, 2018 press release announcing its 2017 Q4 and FY financial results, the Company noted such financial highlights as an increase in 17% increase in gold equivalent ounces ("GEO") produced year-on-year from 2016.

38.    Speaking on these positive results, Defendant CEO and President Huet stated, "Klondex has had a history of setting operating targets and achieving them.  The Company produced more ounces and generated more revenue during 2017 than any year in the organization's history."

39.    Huet continued, noting that he expects future success from Klondex, by stating, "The Company is in an enviable position by owning outstanding assets in one of the best mining jurisdictions of the world.  Our vast land package has also demonstrated incredible near-mine exploration potential.  We are confident in our plans and are determined to deliver on our stated operating and cash flow objectives for 2018.  Production guidance for 2018 is in-line with total production achieved during 2017, including a renewed emphasis on cash generation."

40.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Klondex.  For example, in an August 1, 2017 press release announcing the Company's 2017 Q2 financial results, Klondex reported such positive results as an increase in vessel operating days by 18% year-on-year, and an increase in full fleet "ECO" operating days of 54.2% over the previous quarter.

41.    Clearly, based upon these positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

42.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Klondex to enter into the Proposed Transaction for insufficient consideration.

CLASS ACTION COMPLAINT

*The Flawed Sales Process*

43.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Hecla.

44.     First and foremost, the Preliminary Proxy indicates that a proper market check was not conducted by Klondex or its financial advisors for potential strategic third parties interested in a possible transaction, and the only outreach was limited to parties that had previously contacted the Company, or had been contacted by the Company earlier in the process, regarding a possible investment of a non-controlling interest of Klondex.    Moreover, the Preliminary Proxy divulges almost no information regarding the limited contact with other entities regarding third party initiated outreach or interest in a non-controlling bid.

45.     Additionally, while the Preliminary Proxy claims that a committee of disinterested directors was formed to review and assess Hecla's proposal as well as other strategic alternatives, the Preliminary Proxy fails to disclose if this "Independent Committee" had the power to veto the Hecla proposal, or any other potential strategic transaction.

46.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate manner, with an obvious end-goal of a Hecla transaction.

47.     Moreover, the Preliminary Proxy is unclear as to the nature of specific confidentiality and/or non-disclosure agreements Klondex entered into with various third parties and Hecla throughout the sales process, if any such agreements were different from one another, the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in those agreements, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

48.     Finally, the Preliminary Proxy provides no information as to why the Board and the Independent Committee required no less than three separate financial advisors to be retained on the Proposed Transaction, needlessly increasing the price for such services due by the

Company.  Furthermore, the Preliminary Proxy gives no reason as to why financial advisors GMP and INFOR submitted a joint fairness opinion.

***The Proposed Transaction***

49.    On March 29, 2018, Klondex and Hecla issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **COEUR D'ALENE, IDAHO and VANCOUVER, BC --** Hecla Mining Company (NYSE:HL) (Hecla) and Klondex Mines Ltd. (NYSE American:KLDX; TSX:KDX) (Klondex) today announced Hecla will acquire all the outstanding shares of Klondex, a high-grade Nevada underground gold producer with its Fire Creek, Midas and Hollister mines, through a plan of arrangement (the Transaction). Klondex's Canadian assets will be spun out to its existing shareholders.
>
> Under the Transaction, Hecla will acquire Klondex for consideration of US$462 million with a mix of cash and shares of Hecla common stock and the newly formed company (Klondex Canada). Klondex's shareholders will receive US$2.47 per share in cash or shares of Hecla, which represents a 59% premium to Klondex's 30-day volume-weighted average price, as at March 16, 2018 on the NYSE American.
>
> "Opportunities to acquire significant land packages along Nevada's prolific gold trends are very rare. Rarer still are for these land packages to have the highest grade mines in the U.S. and this transaction is consistent with Hecla's strategy of owning large prospective land packages with mines where we can improve costs, grow reserves and expand production," said Phillips S. Baker, Jr., Hecla's President and CEO. "We structured the deal to use our excess cash balance so our shareholders can benefit from the approximately 162,000 gold equivalent ounces a year of production while minimizing dilution."
>
> Mr. Baker continued, "One of our core strengths is operating high-grade, narrow-vein underground mines, and Klondex's three operating mines – Fire Creek, Midas and Hollister – are some of the highest-grade gold mines in the world. After extensive due diligence, we see significant opportunity to improve costs, throughput and recoveries over time with our expertise. The combined approximately 110 square mile land position offers the opportunity to make discoveries and grow the reserve base as we improve our knowledge of the geology, something we have done at our other operations. We expect this transaction to be accretive on many important financial and credit metrics, with potentially significant synergies. We are pleased that two significant Klondex shareholders have committed to support this transaction, and look forward to welcoming other Klondex shareholders to our company."
>
> "This transaction is an excellent outcome for Klondex and our shareholders, delivering premium value and a clear pathway to develop and optimize the Nevada mining assets and create further value in the future," said Paul Huet,

Klondex's President and CEO. "Hecla has a proven track record of developing and optimizing mining assets such as ours, and has a strong balance sheet that should help Fire Creek and our other properties reach their full potential. Hecla operates a diverse portfolio of some of the highest-grade mines in the world, and the addition of our assets strengthens the portfolio further.

We are delighted to enter into this agreement and the Klondex board unanimously recommends that Klondex shareholders vote in favour of this transaction."

A Further Transformation of Hecla

Seven large land positions located in Alaska, Quebec, Nevada, Mexico and Idaho – Some of the safest and most prolific mining jurisdictions in the world.

Proven operational excellence to be leveraged across expanded portfolio of high-grade mines – Hecla has an extensive track record of optimizing acquired assets as demonstrated at Casa Berardi and Greens Creek. Hecla's expertise in narrow-vein mining and mill optimization will be applied to the acquisitions to improve the operational consistency and enhance the value of the expanded portfolio.

Well capitalized pro-forma company with strong cash flow and solid balance sheet – Hecla expects to improve financial metrics with the Nevada mines' cash flow.

Significant production base with highly prospective growth opportunities and cost reductions – Adds about 162,000 oz of annual gold equivalent production. Hecla will launch a significant exploration program at Fire Creek and at the prospective Hatter Graben discovery at Hollister.

Increased precious metals production – Peer group leading pro-forma production profile amongst intermediate precious metal producers of 762koz AuEq (2017A) or 54.1moz AgEq and commodity distribution of 30% Ag, 50% Au, 15% Zn and 5% Pb (by revenue).

Benefits to Hecla Shareholders

Adds significant land position with extensive exploration and development potential, and production in Nevada, one of the most prolific gold mining jurisdictions in the world.

Increases pro-forma 2017 annual production by 27%, equating to 162koz on a gold equivalent basis or 11.5 million ounces on a silver equivalent basis.

Fire Creek is a cornerstone producing asset with robust cash flows and significant opportunities for exploration, mine life expansion, and increased throughput.

CLASS ACTION COMPLAINT

The Transaction is structured to minimize dilution and is expected to be accretive on most important financial and operating metrics.

Allows Hecla the opportunity to capture meaningful synergies.

Further increases the grade of one of the highest-grade asset portfolios in the industry.

Klondex's assets leverage Hecla's core competency in narrow-vein underground mining.

Benefits to Klondex Shareholders

Immediate and significant premium of approximately 59% based on the 30-day volume weighted average price and approximately 72% based on closing prices on March 16, 2018, with ongoing participation in upside through Hecla shares and through Klondex Canada shares.

Superior financial strength and flexibility to support critical development and exploration programs for Klondex's assets.

Hecla is well capitalized, with a lower cost of capital, making possible critical development and exploration programs for Klondex's assets.

Proven track record of successfully acquiring and optimizing underground assets.

Superior investment with enhanced liquidity and a far more diversified production and financial base.

Hecla has extensive experience operating efficient underground mines for over 125 years.

Ownership in Klondex Canada, a gold company created to leverage Klondex's exploration expertise and significant mining infrastructure assets in Canada.

Klondex Canada

Klondex is pleased to be forming Klondex Canada. Certain members of Klondex's board and management team will continue on at Klondex Canada. Hecla will subscribe for US$7.0 million of common shares of New Klondex in exchange for a 13.46% equity interest, based on a pre-investment Klondex Canada valuation of US$45 million. Klondex Canada intends to make an application to list its shares on the TSX-V.

Terms of the Transaction

CLASS ACTION COMPLAINT

Klondex shareholders may elect to receive either US$2.47 in cash (Cash Alternative) or 0.6272 of a Hecla share (Share Alternative), each full Hecla share being currently valued at US$3.94, subject in each case to pro-ration based on a maximum cash consideration of US$157.4 million and a maximum number of Hecla shares issued of 77.4 million. If all Klondex shareholders elect either the Cash Alternative or the Share Alternative, each Klondex shareholder would be entitled to receive US$0.8411 in cash and 0.4136 Hecla shares. Klondex shareholders may also elect to receive US$0.8411 in cash and 0.4136 of a Hecla share and Klondex shareholders who fail to make an election will automatically receive US$0.8411 in cash and 0.4136 of a Hecla share. Klondex shareholders will also receive shares of a newly formed company (Klondex Canada) which will hold Klondex's Canadian assets, including the True North and Bison Gold Resources properties.

At closing existing Hecla and Klondex shareholders will own approximately 83.8% and 16.2% of Hecla's outstanding common stock, respectively.

Major Shareholder Support

CI Investments Inc. and Sentry Investments Inc., which together hold approximately 42.5 million shares of Klondex, representing approximately 23.7% of Klondex's issued and outstanding shares, have entered into support agreements with Hecla, agreeing to vote their Klondex shares in favour of the Transaction. Each of Klondex's directors and officers have also entered into an agreement to support the Transaction and the Board of Directors of Klondex has unanimously recommended that Klondex's affected securityholders vote in favour of the transaction.

Board of Directors' Recommendations

The Transaction has been unanimously approved by the Board of Directors of each of Klondex and Hecla. The Board of Directors of Klondex unanimously recommends that Klondex's affected securityholders vote in favour of the Transaction.

GMP Securities L.P. and INFOR Financial Inc. have each acted as financial advisors to Klondex with GMP Securities L.P. and Maxit Capital LP having provided fairness opinions to the Board of Directors of Klondex and the Independent Committee of the Board of Directors of Klondex, respectively. CIBC World Markets Inc. and J.P. Morgan have each acted as advisors to the Board of Directors of Hecla and have provided fairness opinions to Hecla's Board of Directors.

Each of the directors and senior officers of Klondex, who as of the date hereof, collectively hold approximately 1.7% of Klondex's issued and outstanding common shares have entered into agreements to support the Transaction.

Transaction Conditions and Timing

The Transaction will be implemented by way of a Court-approved plan of arrangement under the Business Corporations Act (British Columbia) and will require the approval of: (i) 66 2/3 % of the votes cast by the holders of Klondex's common shares, (ii) 66 2/3 % of the votes cast by the affected securityholders of Klondex voting as a single class, and (iii) if applicable, a majority of the votes cast by the holders of Klondex's common shares after excluding any votes of Hecla and other persons required to be excluded under Canadian Multilateral Instrument 61-101 Protection of Minority Security Holders in Special Transactions, all at a special meeting to consider the Transaction.

The completion of the Transaction will also be subject to applicable regulatory approvals and closing conditions customary in transactions of this nature. The Arrangement Agreement provides for customary deal-protection provisions, including a non-solicitation covenant on the part of Klondex and a right for Hecla to match any superior proposal. The Arrangement Agreement includes a termination fee of US$21 million, payable by Klondex or Hecla, under certain circumstances.

It is anticipated that the special meeting of Klondex shareholders to consider the Transaction will be held in June 2018. The Transaction is expected to close in the second quarter of 2018.

No Financing Contingency

Hecla has sufficient cash on hand and available under existing credit arrangements to finance the cash portion of the consideration for the Transaction.

Section 3(a)(10) of the United States Securities Act of 1933, as amended (the Securities Act), exempts from the registration requirements of the Securities Act the issuance and exchange of securities which have been approved, after a hearing upon the fairness of the terms and conditions on which all persons to whom it is proposed the securities will be issued shall have the right to appear, by any Court expressly authorized by law to grant such approval. The parties expect this exemption to apply to Hecla's issuance of shares in the Transaction and the issuance of shares of Klondex Canada as a result of the expected Court approval described below.

Advisors and Counsel

CIBC World Markets Inc. and J.P. Morgan are acting as financial advisors to Hecla in connection with the Transaction. Cassels Brock & Blackwell LLP is serving as Canadian counsel and K&L Gates LLP is acting as U.S. counsel to Hecla.

GMP Securities L.P. and INFOR Financial Inc. are acting as financial advisors to Klondex. Bennett Jones LLP is serving as Canadian counsel to the

CLASS ACTION COMPLAINT

Independent Committee of the Board of Directors of Klondex and Dorsey & Whitney LLP is acting as U.S. counsel to Klondex.

***The Inadequate Merger Consideration***

50.    Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Hecla establish the inadequacy of the merger consideration.

51.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and increases in the cash position of the Company in recent years.

52.    For example, the Company's stock has traded as high as $3.89 per share within a fifty-two week period before the announcement of the proposed transaction, or a ***value more than 57.48% greater than that contained in the Proposed Transaction***.

53.    Additionally, Klondex's future success is extremely likely, given the consistent positive financial results it has reported recently.  Obviously, the opportunity to invest in such a company on the rise is a great coup for Hecla, however it undercuts the investment of Plaintiff and all other public stockholders.

54.    The Proposed Transaction also represents a significant synergistic benefit to Hecla, which operates in the same industry as Klondex, and will use the new assets, mines, and brand capital to bolster its own position in the market.  Specifically, Phillip S. Baker, Jr., CEO of Hecla noted in the press release announcing the Proposed Transaction that, "Opportunities to acquire significant land packages along Nevada's prolific gold trends are very rare.  Rarer still are for these land packages to have the highest grade mines in the U.S. and this transaction is consistent with Hecla's strategy of owning large prospective land packages with mines where we can improve costs, grow reserves and expand production."

55.    Additionally, Baker continued that, "One of our core strengths is operating high-grade, narrow-vein underground mines, and Klondex's three operating mines – Fire Creek, Midas and Hollister – are some of the highest-grade gold mines in the world.  After extensive due diligence, we see significant opportunity to improve costs, throughput and recoveries over

CLASS ACTION COMPLAINT

time with our expertise. The combined approximately 110 square mile land position offers the opportunity to make discoveries and grow the reserve base as we improve our knowledge of the geology, something we have done at our other operations.  We expect this transaction to be accretive on many important financial and credit metrics, with potentially significant synergies." Despite such a 'rare' opportunity with immediate accretive benefits, Klondex stockholders are clearly not being compensated commensurate to the value of their property.

56.    Clearly, while the deal will be beneficial to Hecla it comes at great expense to Plaintiff and other public stockholders of the Company.

57.    Moreover, post-closure, Klondex stockholders will see their voting power significantly diluted as stockholders of Hecla, with their ownership share in the surviving entity being significantly smaller than their current holdings, thus shrinking any future benefit from their investment in Klondex.

58.    Finally, the Proposed Transaction contemplates the spin-off of Klondex's Canadian assets into a third entity, Klondex Canada (later identified in the Preliminary Proxy as "Havilah"), valued at approximately $45 million, of which, Hecla will acquire a 13.46% equity interest in and Klondex stockholders will acquire an 86.54% interest in as part of the Proposed Transaction.

59.    The Preliminary Proxy notes that each Klondex stockholder will receive 0.125 shares of Havilah for each Klondex share they own.

60.    As stock in Havilah will be inherently harder for Plaintiff and other public stockholders to value (as the Canadian portions of the Company's value on an independent basis is not necessarily the same value as they would have as part of a larger more diversified company), the shares of Havilah granted to Klondex stockholders are insufficient consideration for their Klondex stock being given up in the Proposed Transaction.

61.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Hecla at the expense of Klondex stockholders, which clearly indicates that Klondex stockholders were not an overriding concern in the formation of the Proposed Transaction.

CLASS ACTION COMPLAINT

***Preclusive Deal Mechanisms***

62.    The Merger Agreement contains certain provisions that unduly benefit Hecla by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, under certain circumstances, Klondex will be required to pay up to $21 million to Hecla if the Merger Agreement is terminated under certain circumstances.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

63.    The Merger Agreement also contains a "No Solicitation" provision that restricts Klondex from considering alternative acquisition proposals by, *inter alia*, constraining Klondex's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a *"Superior Proposal"* as defined in the Merger Agreement.

64.    Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Hecla information in order to match any other offer, thus providing Hecla access to the unsolicited bidder's financial information and giving Hecla the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Hecla.

65.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

66.    In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part

of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains fixed exchange ratios of Hecla stock offered based upon which consideration option Klondex stockholders wish to receive, which means that Klondex stockholders will receive fixed share portions of Hecla common stock for each of their shares, *regardless of Hecla's stock price at the close of the transaction*.  Thus, the consideration payable to Klondex stockholders is not insulated from fluctuations in Hecla's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

67.  Finally, at the same time that the Company entered into the Merger Agreement, certain large shareholders of Klondex, entered into an agreement with Hecla pursuant to which such individuals and entities have agreed, among other things, to vote their shares of common stock of the Company in favor of the approval of the Merger Agreement at a meeting of the Company's stockholders to be held for the purpose of approving the Merger Agreement. Collectively, the signatories of the Voting and Support Agreement own approximately 23.7% of all Klondex outstanding shares, thus making it far more likely that the Proposed Transaction will be pushed through.

68.  Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

69.  The sales process as indicated in the Preliminary Proxy leading up to the Proposed Transaction indicates serious flaws in the decision to enter into the Proposed Transaction.

70.  Specifically, the breakdown of the benefits of the deal indicate that Klondex insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public

stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Klondex.

71.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant consideration.

73.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company equity awards, will be canceled and converted into the right to the merger consideration.

74.    These large blocks of stock and various Company equity awards, which Klondex Management and Directors beneficially own, will be paid out under the terms of the Proposed Transaction as detailed below:

| Name | Number and Percentage of Issued and Outstanding Klondex Shares[1] | Number and Percentage of Issued and Outstanding Klondex Options[2] | Number and Percentage of Issued and Outstanding Klondex RSUs[3] | Number and Percentage of Issued and Outstanding Performance RSUs[4] | Number and Percentage of Issued and Outstanding Klondex DSUs[5] |
|---|---|---|---|---|---|
| Paul Huet, *Director, President and Chief Executive Officer* | 535,289 0.30% | 350,000 9.47% | 187,244 18.41% | 196,097 49.58% | Nil 0.00% |
| Barry Dahl, *Chief Financial Officer* | 205,207 0.11% | 207,167 5.61% | 67,765 6.66% | 59,656 15.08% | Nil 0.00% |
| Rodney Cooper, *Director* | 208,320 0.12% | 26,667 0.72% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| Mark Daniel, *Director* | 36,983 0.02% | 33,333 0.90% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| James Haggarty, *Director* | 114,270 0.06% | 180,000 4.87% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| Richard J. Hall, *Chairman* | 109,625 0.06% | 460,000 12.45% | Nil 0.00% | Nil 0.00% | 90,090 25.00% |
| William Matlack, *Director* | 1,222,488 0.68% | 197,000 5.33% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| Charles Oliver, *Director* | 45,046 0.03% | 100,000 2.71% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| Blair Schultz, *Director* | 564,333 0.31% | 480,000 12.99% | Nil 0.00% | Nil 0.00% | 45,046 12.50% |
| John Antwi, *Senior Vice President of Corporate Development and Planning* | 34,640 0.02% | 300,000 8.12% | 35,256 3.47% | 25,108 6.35% | Nil 0.00% |
| Michael Doolin, *Chief Operating Officer* | 96,750 0.05% | 248,000 6.71% | 76,110 7.48% | 68,258 17.26% | Nil 0.00% |

CLASS ACTION COMPLAINT

| Brian Morris, | 34,227 | 337,000 | 44,449 | 46,409 | Nil |
| *Senior Vice President of Exploration* | 0.02% | 9.12% | 4.37% | 11.73% | 0.00% |

75.     Notably, the Preliminary Proxy fails to disclose information relating to the specific consideration payable to Klondex Directors and management under the Proposed Transaction given the aforementioned ownership and equity award information.     Such information is important to Plaintiff and other stockholders in determining whether to vote their stock in favor of the transaction.

76.     Moreover, certain employment agreements with all Klondex executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.   These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Klondex common stockholders, and will grant massive payouts to Company insiders as follows:

| Name and Position | Estimated Change of Control Payment (US$) |
| --- | --- |
| **Paul Huet** | |
| *President and Chief Executive Officer* | |
| Cash severance entitlement[1] | 2,106,800 |
| Acceleration of equity awards[2] | 1,057,258 |
| In-the-Money Option Value[2] | 132,352 |
| Group benefits entitlement[3] | 78,560 |
| **Total Termination Entitlement** | 3,374,970 |
| **Barry Dahl** | |
| *Chief Financial Officer and Corporate Secretary* | |
| Cash severance entitlement[1] | 683,833 |
| Acceleration of equity awards[2] | 351,169 |
| In-the-Money Option Value[2] | 164,154 |
| Group benefits entitlement[3] | 52,373 |
| **Total Termination Entitlement** | 1,251,529 |
| **John Antwi** | |
| *Senior Vice President, Corporate Development and Planning* | |
| Cash severance entitlement[1] | 491,200 |
| Acceleration of equity awards[2] | 163,586 |
| In-the-Money Option Value[2] | — |
| Group benefits entitlement[3] | 45,827 |
| **Total Termination Entitlement** | 700,613 |
| **Michael Doolin** | |
| *Chief Operating Officer* | |
| Cash severance entitlement[1] | 813,233 |
| Acceleration of equity awards[2] | 398,035 |
| In-the-Money Option Value[2] | 204,113 |
| Group benefits entitlement[3] | 32,551 |
| **Total Termination Entitlement** | 1,447,932 |
| **Brian Morris** | |
| *Senior Vice President of Exploration* | |

CLASS ACTION COMPLAINT

| | |
|---|---:|
| Cash severance entitlement[1] | 500,250 |
| Acceleration of equity awards[2] | 250,463 |
| In-the-Money Option Value[2] | 385,661 |
| Group benefits entitlement[3] | 36,471 |
| **Total Termination Entitlement** | 1,172,845 |
| **TOTAL:** | **7,947,889** |

77.    Additionally, several Company insiders will retain lucrative employment positions with Havilah after the Proposed Transaction is consummated – consideration not shared amongst Plaintiff and other Klondex stockholders.  Specifically, current Company executive John Antwi, as well as Defendant Shultz, will become Halivah executives, and Defendants Schultz, Huet, Haggarty along with Company insiders John Antwi and Brian Morris will sit on Havilah's Board of Directors.

78.    It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

79.    Thus, while the Proposed Transaction is not in the best interests of Klondex stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy**

80.    On May 23, 2018, Klondex filed with the SEC a materially misleading and incomplete Preliminary Proxy that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

81.    Specifically, the Preliminary Proxy fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

a.    The Preliminary Proxy fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between Klondex and any interested third party during the sales process, if their terms

CLASS ACTION COMPLAINT

differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

b. The Preliminary Proxy fails to disclose sufficient information regarding what specific powers the Independent Committee had in relation to approval or denial of proposed strategic alternatives;

c. The Preliminary Proxy fails to disclose why no market check for potentially interested third parties was performed at any point during the sales process, including after potentially interested third parties contacted Klondex while under exclusivity with Hecla;

d. The Preliminary Proxy fails to properly disclose why three separate financial advisors were engaged during the sales process, needlessly increasing the price for such services due by the Company;

e. The Preliminary Proxy gives no reason as to why financial advisors GMP and INFOR submitted a joint fairness opinion, the reasons for the 2 advisors, the division of labor or the responsibilities;

f. The Preliminary Proxy does not indicate whether the C$150,000 'work fee' or the 'additional compensation' of C$7.5 million owed to GMP and INFOR will be shared between them, and if so, in what amount, or if each financial advisor will be given a separate payment of C$7.65 million; and

g. The Preliminary Proxy does not divulge information relating to the specific consideration payable to Klondex Directors and management under the Proposed Transaction given the aforementioned ownership and equity award information.

*Omissions and/or Material Misrepresentations Concerning Klondex's Financial Projections*

82.    The Preliminary Proxy indicates that in connection with the rendering of Maxit's fairness opinion, Maxit reviewed "internal management forecasts, development and operating

projections, estimates (including future estimates of mineable resources) and budgets prepared or provided by or on behalf of Klondex and Hecla". Additionally, the Preliminary Proxy notes that GMP reviewed, "financial forecasts, projections, models and estimates."

83. Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Klondex and/or Hecla management provided to the Board and to the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

84. The Preliminary Proxy fails to provide material information concerning the financial projections prepared by Klondex management. Specifically, the Preliminary Proxy fails to disclose the material line items for the following metrics:

      a. The line items used to calculate the Unlevered, After-tax Free Cash Flows for the Fire Creek, Midas, and Hollister Mines.

85. The Preliminary Proxy fails to provide material information concerning projections prepared by Hecla management. Specifically, the Preliminary Proxy fails to disclose the material line items for the following metrics:

      a. The line items used to calculate the consolidated cash flow from operations.

86. The Preliminary Proxy fails to provide any financial projections whatsoever regarding Havilah.

87. The Preliminary Proxy fails to provide any financial projections whatsoever regarding the combined Company.

88. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

89.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Klondex are unable to properly evaluate the Company's true worth, the accuracy of GMP's, INFOR's, or Maxit's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Maxit*

90.     In the Preliminary Proxy, Maxit describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

91.     With respect to the *NAV Analysis*, the Preliminary Proxy Fails to disclose the following:

a.     The inputs and results of the Discounted Cash Flow analysis for mining assets and corporate costs conducted by Maxit as a component of the NAV analysis, including

i.     The inputs and assumptions used to determine a discount rate range of 5.0% to 7.0% for Klondex.

b.     The range of results of NAV per share that resulted in a variance within 10% for Klondex excluding Havilah;

c.     The range of results of NAV per share that resulted in a variance in excess of 10% for Maxit.

92.     With respect to *Comparable Trading with Control Premium Approach*, the Preliminary Proxy fails to disclose the following:

a.     The specific P/NAV and P/Cash flow values for each of the Comparable Companies used;

b.     The specific reasoning for selecting the Comparable Companies;

93.     With respect to the *Precedent Transaction Approach*, the Preliminary Proxy fails to disclose the following:

        a.  The specific P/NAV and P/Cash flow values for each of the Precedent Transactions used;

        b.  The specific reasoning for selecting the Precedent Transactions;

        c.  The specific date on which each transaction took place.

94.     With respect to the *Transaction Premiums Analysis*, the Preliminary Proxy fails to disclose the following:

        a.  The specific premium to last undisturbed and premium to 20-Day VWAP for each the Precedent Transactions used;

        b.  The specific reasoning for selecting the Precedent Transactions;

        c.  The specific date on which each transaction took place

95.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

96.     Without the omitted information identified above, Klondex's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Klondex's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by GMP/INFOR*

97.     In the Preliminary Proxy, GMP/INFOR describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

CLASS ACTION COMPLAINT

98.    Specifically, it appears that GMP/INFOR provided to the Board, several analyses, including a Trading and Historical Share Price Analysis, a Consideration Analysis, a Precedent Transaction Analysis, and a Comparable Multiple Analysis, however the Preliminary Proxy does not provide the inputs or results of any of these analyses.

99.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

100.    Without the omitted information identified above, Klondex's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, to the extent that the analyses performed by GMP/INFOR were of a similar nature to the analyses performed by Maxit, the relevant inputs and outputs provide further comparative information that stockholders can use to evaluate the Proposed Transaction.  As such, without the key financial information and related disclosures, Klondex's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

101.    Plaintiff repeats all previous allegations as if set forth in full herein.

102.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

103.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Klondex.

104.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Klondex by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Klondex to its public stockholders.

CLASS ACTION COMPLAINT

105.    Indeed, Defendants have accepted an offer to sell Klondex at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

106.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

107.    The Individual Defendants dominate and control the business and corporate affairs of Klondex, and are in possession of private corporate information concerning Klondex's assets, business and future prospects.   Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Klondex which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

108.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

109.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Klondex's assets and have been and will be prevented from obtaining a fair price for their common stock.

110.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

111.    Plaintiff and the members of the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

CLASS ACTION COMPLAINT

## SECOND COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

112.    Plaintiff repeats all previous allegations as if set forth in full herein.

113.    Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

114.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

115.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

CLASS ACTION COMPLAINT

116.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

117.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

118.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

119.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

120.    Plaintiff repeats all previous allegations as if set forth in full herein.

121.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

CLASS ACTION COMPLAINT

122.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.    The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.    The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.    The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

123.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Klondex's business, the information contained in its filings with the SEC, and its public statements.    Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.    As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

124.    The Individual Defendants acted as controlling persons of Klondex within the meaning of Section 20(a) of the Exchange Act.    By reason of their position with the Company, the Individual Defendants had the power and authority to cause Klondex to engage in the wrongful conduct complained of herein.    The Individual Defendants controlled Klondex and all of its employees.    As alleged above, Klondex is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.    By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

CLASS ACTION COMPLAINT

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Enjoining the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Klondex and obtain a transaction which is in the best interests of Klondex and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury on all issues which can be heard by a jury.

3

Dated: May 31, 2018                         **ALDRICH LAW FIRM, LTD.**

4

5

      /s/ John P. Aldrich

6    John P. Aldrich, Esquire
1601 S. Rainbow Blvd., Suite 160

7    Las Vegas, Nevada 89146
702.853.5490 Telephone

8    702.227.1975 Fax

9
Evan Smith, Esquire

10    Marc L. Ackerman, Esquire
**BRODSKY & SMITH, LLC**

11    Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004

12    Tel (610) 667-6200
Fax (610) 667-9029

13

14    *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## PLAINTIFF'S CERTIFICATION

I, David Gunderson ("Plaintiff"), declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in Klondex Mines Ltd. of securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary):

| DATE | # OF SHARES PURCHASED | # OF SHARES SOLD | PRICE |
|------|------------------------|-------------------|-------|
| 2/2016 | 1925 | 0 | $ 2.20 |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of March, 2018.

Sign Name:

Print Name: David Gunderson

Address: 209 Hammock Oak Cir

State, Zip Code: DeBary, FL 32713

County/Country (if not USA): Volusia County